**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | 2:06-CR-168 PS |
| | ) | |
| | ) | |
| MATTHEW HENSLEY | ) | |

## OPINION AND ORDER

Matthew Hensley was arrested by federal agents and read his *Miranda* rights. He immediately told the arresting agents that he wanted to talk to a lawyer. The agents responded by telling him that a judge would soon hear from the agents and that this was his only chance to tell his side of the story. The agents then implied that if Hensley did not talk with the agents, he would stay in jail pending trial. Because the agents did not honor Hensley's request for counsel, the statement he subsequently gave is suppressed.

## FACTUAL BACKGROUND

On August 19, 2006, Hensley was arrested in an undercover sting operation targeting adults soliciting minor children over the internet for purposes of engaging in sexual activity. Following his arrest, Hensley was taken to the Porter County Sheriff's Office for interrogation and booking.

At approximately 2:15 p.m. on the day of his arrest, Agents Demetrius Flowers and Sean Moore met with Hensley in an interrogation room. Agents Moore and Flowers came into the interrogation room, introduced themselves to Hensley, and Agent Moore informed Hensley that they needed to go over some routine paperwork before they could speak with him about his

1

arrest.  Agent Moore asked Hensley general background questions, such as his date of birth, current address, and place of employment, and apparently recorded this information on a standard intake form.  Once Agent Moore completed the intake form, he read Hensley his *Miranda* rights, and Hensley signed a written acknowledgment that he had received these warnings.

To completely understand what happened next, we set out the entire exchange between Hensley and the agents in full below:

| | |
|---|---|
| Agent Moore: | Okay, next section here [on the Warning and Consent to Speak form] is the waiver.  Do you want to talk to us...can we talk to you?  You know, to see what's going on? |
| Matthew Hensley: | We'll see where that goes, but yes. |
| Agent Moore: | Okay, cool.  The next section [on the Warning and Consent to Speak form says:]  "I do not want a lawyer at this time.  I understand and know what I am doing.  No promises or threats have been made to me an no pressure or force of any kind has been used against me.  I hereby voluntarily and intentionally waive my right to remain silent and my right to have an attorney at this time.  I am willing to make a statement and answer questions."  Okay, with the waiver, if you could sign... |
| Matthew Hensley: | I would like to speak to an attorney before I answer any questions. |
| Agent Moore: | You would? |
| Matthew Hensley: | Yes. |
| Agent Moore: | Okay. |
| Agent Flowers: | Alright, I mean, that's your right, I just want to make sure you know that.  This is your opportunity to tell us and help your self out and answer any questions and get things in the open.  This is your opportunity to tell your story. |
| Matthew Hensley: | And I understand that and I understand you have to say that... |
| Agent Flowers: | Okay. |

2

| | |
|---|---|
| Matthew Hensley: | But I would like to speak to an attorney. |
| Agent Flowers: | I just wanted to make sure you know... |
| Matthew Hensley: | Yes... |
| Agent Flowers: | ... once I step in front of a judge, he is going to hear my side of the story and he is not going to hear anything you say and that is going to go a long way towards deciding whether you stay in custody or not. |
| Matthew Hensley: | I understand that. |
| Agent Flowers: | Okay. |

Astoundingly, Agent Flowers candidly testified that his statements to Hensley were made in an attempt to convince Hensley to revoke his previously asserted right to counsel. Agent Flowers admitted that Hensley would be more likely to provide worthwhile information during the interrogation if Hensley was not represented by counsel.

Following Agent Flowers' statements to Hensley, Agents Flowers and Moore left the interrogation room. Hensley credibly testified that he sat alone in the interrogation room for approximately two hours, thinking about Agent Flowers' parting comments, before he was finally taken to the booking area. Once in the booking area, Hensley discovered that he was prohibited from making any telephone calls. Shortly thereafter, Hensley told the booking officer that he wished to speak with Agents Flowers and Moore. Hensley was immediately returned to the interrogation room.

Agents Flowers and Moore were waiting for him. The agents informed Hensley that he had already been read his *Miranda* rights and that he was coming back to the interrogation room on his own accord. Agent Flowers then read the waiver section on the Warning and Consent to Speak form to Hensley and pointed to the signature line beneath the written waiver statement,

3

asking Hensley to sign the form.  Hensley did so without reading it.  Hensley then began speaking with the agents regarding his involvement with a number of internet chat rooms.  On several occasions during his interrogation, Hensley referred to his desire to speak with counsel, but the interrogation was never suspended, nor did the agents ask Hensley to clarify his requests. Hensley now moves to suppress all of his statements made during the August 19, 2006, interrogation.

### DISCUSSION

Hensley moves to suppress the statements he made claiming that they were obtained in violation of the bright-line rule established in *Edwards v. Arizona*, 451 U.S. 477, 485 (1981), and that, in any event, Hensley did not voluntarily waive his *Miranda* rights.  Custodial interrogation place inherently compelling pressures on those being interrogated. Consequently, certain warnings are necessary to safeguard the accused's Fifth Amendment privilege against self-incrimination.  *Miranda v. Arizona*,  384 U.S. 436 (1966); see also *A.M. v. Butler*, 360 F.3d 787, 795 (7th Cir. 2004).  Under *Miranda*, law enforcement officers are obligated to advise a suspect of his right to silence and his right to consult with counsel prior to the initiation of a custodial interrogation.  384 U.S. at 473-74.  Any statements obtained during custodial interrogation conducted in violation of the *Miranda* rules may not be admitted against the accused.  *United States v. Lee,* 413 F.3d 622, 625(7th Cir. 2005).

A.    *Edwards* **Violation**

When a defendant invokes his right to counsel, all interrogation must cease until counsel has been made available unless the defendant initiates further communication with the police. *Edwards*, 451 U.S. at 485.  "This [is] in effect a prophylactic rule, designed to protect an accused

4

in police custody from being badgered by police officers." *Oregon v. Bradshaw*, 462 U.S. 1039, 1044 (1983); *see also McNeil v. Washington*, 501 U.S. 171, 176 (1991) (the *Edwards* rule is a "second layer of prophylaxis for the *Miranda* right to counsel").  If police violate *Edwards* by improperly interrogating a defendant after the invocation of his right to counsel, any incriminating statements made by the defendant are inadmissible.  *United States v. Briggs*, 273 F.3d 737 (7th Cir. 2001); *see also Michigan v. Harvey*, 494 U.S. 344 (1990) (violation of bright-line rule in *Edwards* requires suppression of all statements given by defendant after his invocation of right to counsel).

The *Edwards* rule is only implicated when the defendant is subjected to further custodial interrogation after his initial assertion of the right to counsel. *Edwards*, 451 U.S. at 486.  Thus, the threshold issue in this analysis is whether Hensley was subjected to further interrogation under *Edwards*. (He was plainly in custody).

One year before *Edwards* was decided, the Court defined "interrogation" within the context of the Fifth Amendment.  *Rhode Island v. Innis*, 446 U.S. 291 (1980).  The *Innis* Court noted that the "concern of the Court in *Miranda* was that the 'interrogation environment' created by the interplay of interrogation and custody would 'subjugate the individual to the will of his examiner' and thereby undermine the privilege against compulsory self-incrimination."  *Id*. at 299 (internal citations omitted).  For this reason, "'interrogation', as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent to custody itself."  *Id*. at 300.  The Court therefore concluded that "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know

5

are reasonably likely to elicit an incriminating response[1] from the suspect."  *Id.* at 301.

The Court's analysis in *Smith v. Illinois* sheds further light on the issue of "interrogation" following a defendant's assertion of his right to counsel.  469 U.S. 91 (1984).  In *Smith*, a defendant invoked his right to counsel midway through the reading of his *Miranda* rights.  After the defendant invoked his right to counsel, the following exchange took place:

> Q.    If you want a lawyer and you're unable to pay for one a lawyer will be appointed to represent you free of cost, do you understand that?
>
> A.    Okay.
>
> Q.    Do you wish to talk to me at this time without a lawyer being present?
>
> A.    Yeah and no, uh, I don't know what's what, really.
>
> Q.    Well.  You either have [to agree] to talk with me without a lawyer being present and if you do agree to talk with me without a lawyer being present you can stop at any time you want to.
>
> A.    Okay, I'll talk to you then.

*Id.* at 93.  Thus, "[i]nstead of terminating the questioning [after Smith invoked his right to counsel,] the interrogators proceeded to finish reading Smith his *Miranda* rights and then pressed him to answer their questions."  *Id.*  The Court found that Smith had unequivocally invoked his right to counsel and that the detectives failed to terminate their questioning.  *Id.* at 98, n.7.  The Court characterized the officers' statements as a "subsequent interrogation" and opined that the statements were the type of police "badgering" and "overreaching" that *Edwards* was intended to protect against. *Id*. at 99, n. 8.

In *United States v. Lee*, 413 F.3d 622, 625 (7th Cir. 2005), the Seventh Circuit left open

---

[1]The term "incriminating response" includes any statement – whether inculpatory or exculpatory – that the prosecution may seek to introduce at trial.  *Innis*, 446 U.S. at 301, n. 5. Therefore, it is immaterial that the statements at issue here were actually false exculpatory statements.

the question whether mere statements by the police can amount to interrogation.  But under the facts of this case, we can come to no other conclusion.  This is because an objective observer would have believed that the officer's statements to Hensley were reasonably likely to elicit an incriminating response. *United States v. Abdulla*, 294 F.3d 830, 834 (7th Cir.2002); *United States v. Westbrook*, 125 F.3d 996, 1002 (7th Cir.1997); *United States v. Cooper*, 19 F.3d 1154, 1162 (7th Cir.1994).

The relevant facts are straightforward.  Shortly after being read his *Miranda* warnings, Hensley unequivocally asserted his right to counsel.  Rather than immediately terminating all questioning, Agent Flowers told Hensley that he was being given an opportunity to tell his side of the story to the agents.  Agent Flowers then intimated that if Hensley insisted on invoking his right to counsel, a judge would only hear the agents' side of the story, which, in turn, would go a long way towards Hensley's continued detention.  Although an officer can hope all he wants that a suspect will incriminate himself, *see Arizona v. Mauro*, 481 U.S. 520, 529 (1987), he may not interrogate the suspect after he has invoked his right to counsel.  Agent Flowers candidly admitted that his statements to Hensley were designed to prompt Hensley to waive his rights and provide a statement.  Agent Flowers knew – indeed, he testified to the fact – that if Hensley waived his right to counsel, he would be more likely to provide incriminating statements during the interrogation.

Agent Flowers' statements were admittedly intended to elicit a waiver and an incriminating response from Hensley, and Agent Flowers clearly knew that his statements were reasonably likely to elicit just that.  In our view, an objective observer would plainly conclude this as well.  This is bolstered by the fact that Hensley credibly testified that after listening to

Agent Flowers' statements, he felt compelled to waive his rights and give a statement to the agents. Accordingly, this Court finds that Agent Flowers subjected Hensley to the "functional equivalent" of interrogation immediately following Hensley's assertion of his right to counsel, in direct violation of *Edwards*. *See Smith*, 469 U.S. at 91; *see also United States v. Silknitter*, 2006 WL 860064 (M.D.Pa. 2006) (police statement to defendant that it was his chance to tell his side of story and tell truth was improper "plea to conscience" that was functional equivalent of interrogation in violation of *Edwards*); *Weeks v. Angelone*, 4 F.Supp. 2d 497 (E.D.Va. 1998) (officer's summary of investigation and evidence against defendant, followed by statement that it was defendant's chance to provide his explanation of what happened, was functional equivalent of interrogation in violation of *Edwards*)

Hensley's request to speak with the agents after he was sent to booking does not constitute "initiation" of the reinterrogation by Hensley, nor does the lapse in time cure the infection of Agent Flowers' earlier improper interrogation. "Although *Edwards* permits further interrogation if the accused initiates the conversation, the validity of this waiver logically depends on the accused being free from further interrogation. In other words, the 'initiation' must come prior to further interrogation; initiation only becomes an issues if the agents follow *Edwards* and cease interrogation upon a request for counsel." *United States v. Gomez*, 927 F.2d 1530, 1538-39 (11th Cir. 1991); *see also United States v. Whaley*, 13 F.3d 963, 967 (6th Cir. 1994) (*Edwards* "initiation" of reinterrogation occurs when, without the influence by authorities, the suspect shows a desire to talk generally about his case).

While the government might contend that the coercive effect of Flowers' statements were dispelled by the time Hensley made his statements, this Court disagrees. Hensley's decision to

speak to the agents was clearly the result of Flowers' improper interrogation.  Hensley's free will was infected by Flowers' earlier statements, and the small lapse in time between Flowers' interrogation and Hensley's subsequent statements did not purge the initial taint.  Indeed, Hensley had nothing to do but sit by himself in an interrogation room, replaying Agent Flowers' statements over in his head, thereby likely amplifying the original taint of Agent Flowers' coercive statements.  Hensley's credible testimony establishes that he only sought to speak to the agents because of Flowers' impermissible statements.

In sum, Agent Flowers improperly interrogated Hensley following the invocation of his right to counsel.  The delay between the impermissible further interrogation and Hensley's later conversation with the agents did not allow the taint from the coercive effect of the improper interrogation to abate.  Accordingly, the agents' violation of the bright-line rule in *Edwards* mandates suppression of Hensley's statements made after his arrest.

### B.      Invalid Waiver of Miranda Rights

Even if this Court found that Agent Flowers' statements following Hensley's assertion of the right to counsel did not constitute further interrogation in violation of *Edwards*, Hensley's statements would not be admissible because the government did not establish a knowing and voluntary waiver of Hensley's right to counsel.  "[I]f a conversation taking place after the accused has expressed his desire to deal with the police only through counsel is initiated by the accused, [thereby precluding the application of *Edward's* bright-line rule,] where reinterrogation follows, the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation."  *Oregon v. Bradshaw*, 462 U.S. 1039, 1044 (1983) (internal citations omitted).  This is easier said than

9

done, as any claim by the government that the suspect recanted his previously invoked right to counsel must be viewed with skepticism. *Arizona v. Roberson*, 486 U.S. 675, 681 (1975).  Here, even if the absence of an *Edwards* violation, the government failed to carry its burden of establishing that Hensley validly waived his right to counsel.

In order to decide whether a defendant waived his previously invoked right to counsel, this Court must determine "whether a valid waiver of the right to counsel ... had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances." *Edwards*, 451 U.S. at 486, n. 9.  This inquiry has two distinct dimensions. *Henderson v. DeTella*, 97 F.3d 942, 946 (7th Cir. 1996). The waiver must be both a knowing and intelligent waiver of a known right, and the waiver must be made voluntarily.  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  The waiver in this case was plainly made with a full understanding of the nature of the right being abandoned – that is, it was made knowingly by Hensley.  Whether it was made voluntarily, however, is a horse of different color.

Similar to the determination of whether a statement is involuntary under the Due Process Clause, the test for determining the voluntariness of a *Miranda* waiver is whether, under the totality of the circumstances, the defendant's will was overborne or his capacity for self-determination critically impaired, *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), as a result of the coercive police conduct.  *Colorado v. Spring*, 479 U.S. 564.  When evaluating the totality of the circumstances, the court should take into account the defendant's background, the conditions of the interrogation, and the conduct of law enforcement.  *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973).

Although Hensley is an intelligent individual with some college-level education, prior to

August 19, 2006, Hensley had never been arrested.  In fact, nothing suggests that Hensley has anything more than a passing familiarity with the criminal justice system.  On balance, Hensley's background neither favors nor disfavors a finding of voluntariness.

While the conditions under which the waiver was taken do not alone indicate that Hensley's will was overborne, the conduct of the police does.  Because coercive police activity or police-overreaching is a necessary predicate to finding an involuntary waiver, *United States v. Huerta*, 239 F.3d 865 (7th Cir. 2001), the absence of such conduct precludes any finding that a defendant's waiver of his Miranda rights was involuntary.  *Colorado v. Connelly*, 479 U.S. 157 (1986).  The Court finds that Agent Flowers used coercion to obtain a waiver of Hensley's rights.

Following Hensley's invocation of his right to counsel, Agent Flowers provided Hensley with an unsolicited legal opinion – and a wrong opinion at that – suggesting that Hensley would be penalized or suffer adverse consequences if he insisted upon exercising his rights.  In essence, Agent Flowers gave the *Miranda* warnings with one hand and snatched them back with the other.  Contrary to *Miranda's* teachings to "scrupulously honor" a defendant's exercise of his Fifth Amendment rights, Agent Flowers tried to discourage Hensley from exercising these rights by threatening a penalty if Hensley insisted upon having counsel present for the interrogation.  Such coercive statements are clearly forbidden under *Miranda*.

Given the factual background, this Court has no choice but to conclude that, under the totality of the circumstances, Hensley's waiver of his *Miranda* rights was not voluntary.  While the factors regarding Hensley's background and the conditions of the interrogation neither favor nor disfavor a finding of voluntariness, Agent Flowers' statements to Hensley tip the balance in

favor of finding an involuntary waiver.  To Hensley, who had "indicated his inability to cope with the pressures of custodial interrogation by requesting counsel [and was not allowed to make any telephone calls to his parents or counsel, Agent Flowers'] further interrogation without counsel having been provided ... surely exacerbated whatever compulsion to speak [Hensley was] feeling." *Arizona v. Roberson*, 486 U.S. 675, 686 (1988).  Based on this Court's analysis of the testimony and video evidence, it is clear that Hensley's waiver of his *Miranda* rights was precipitated by Agent Flowers' coercive statements.  Therefore, Hensley's waiver of his right to counsel was not voluntary.  *See Collazo v. Estelle*, 940 F.2d 411 (9th Cir. 1991).

## CONCLUSION

This case presents a textbook violation of *Edwards*.  The agents' failure to comply with the central tenet of that case – namely, when a suspect indicates that he wishes to deal with police through counsel, interrogation must cease immediately – mandates suppression of any statements from the August 19, 2006, interrogations.  Furthermore, the agents' coercive attempt to undermine the *Miranda* rights that they read no less than two minutes beforehand cannot be countenanced, as such attempts eliminate the voluntary aspect of any *Miranda* waiver.  For the foregoing reasons, the Defendant's Motion to Suppress [Doc. 33] is **GRANTED**.

**SO ORDERED.**

ENTERED:    February 14, 2007

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

12